1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28

O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

GREENWICH INSURANCE
COMPANY,

          Plaintiff,

vs.

MEDIA BREAKAWAY, LLC ET AL.

          Defendants.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV08-937 CAS (CTx)

**ORDER GRANTING GREENWICH
INSURANCE COMPANY AND
INDIAN HARBOR INSURANCE
COMPANY'S MOTIONS FOR
SUMMARY JUDGMENT**

I.    **INTRODUCTION**

       On February 11, 2008, plaintiff Greenwich Insurance Company ("Greenwich")
filed the instant action pursuant to 28 U.S.C §§ 2201 *et seq.* against defendants and
counterclaimants Media Breakaway, LLC ("Media Breakaway") and its CEO Scott
Richter ("Richter") (collectively, "defendants") seeking a declaratory judgment
regarding its rights and obligations under Policy No. ELU-094382-06 issued by
Greenwich to defendant Media Breakaway.

       On December 9, 2008, defendants filed an answer and counterclaim against
Greenwich and third party defendant Indian Harbor Insurance Company ("Indian
Harbor") alleging claims for: (1) breach of the duty to defend; (2) breach of the duty to

indemnify; and (3) breach of the implied covenant of good faith and fair dealing.

On January 21, 2009, Indian Harbor filed a counterclaim against defendants. On February 20, 2009, Indian Harbor filed a "corrected counterclaim" against defendants seeking (1) declaratory judgment as to the application of certain exclusions in a policy that they issued to defendants; (2) reimbursement for defense expenses paid under a reservation of rights; and (3) declaratory judgment as to the application of the policy's definition of damages.

On June 11, 2009, Greenwich and Indian Harbor each filed a separate motion for summary judgment as to their claims and defendants' counterclaims. On July 6, 2009, defendants filed separate oppositions to Greenwich and Indian Harbor's respective motions. On July 13, 2009, Greenwich and Indian Harbor filed separate replies. A hearing was held on July 22, 2009. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

### A.    The MySpace Action

Media Breakaway is an online marketing company that operates a network of independent contractors or "affiliates," who are compensated for directing internet traffic to websites affiliated with Media Breakaway. Steve Richter is the current CEO and president of Media Breakaway, but was general counsel at the time the MySpace litigation was ordered to Arbitration. Richter Decl. ¶ 1.

On January 19, 2007, MySpace, Inc. ("MySpace") filed a complaint against defendants in the Central District of California, MySpace, Inc. v. Optinrealbig.com, LLC, et al., Case No. CV 07-496 GHK (RCx) (C.D. Cal), alleging multiple claims for violations of state and federal law.[1] GSUF ¶ 6; DSGI ¶ 6. The complaint alleges that

---

[1] MySpace alleged claims for (1) violations of the computer fraud and abuse act, 18 U.S.C. § 1030; (2) violations of the CAN-SPAM Act, 15 U.S.C. § 7701; (3) violations of the Electronic Communication Privacy Act, 18 U.S.C § 2701; (4) violations of California's
(continued...)

defendants sent spam mail through MySpace users' accounts without their knowledge, by either misappropriating users' login names and passwords – a process called "phishing" – or by acquiring "phished" names and passwords from other parties.  GSUF ¶ 7; DSGI ¶ 7.  On August 13, 2007, the Honorable George H. King granted defendants' motion to compel arbitration.  Arbitration proceedings occurred in March and April of 2008.  GSUF ¶ 16, DSGI ¶ 16.

The arbitrator issued a final arbitration award (the "Arbitration Award") on June 12, 2008.[2]  The arbitrator found Media Breakaway and Richter liable for damages, and expressly determined that they, "permitted, encouraged, supported and benefitted from spamming, illegal spamming on the MySpace network."  GSUF ¶ 31; DSGI  ¶ 29; Declaration of Jeffrey Ward ("Ward Decl."), Ex. 3 at 11 ("Arbitration Award"). According to the arbitrator, "some if not many of [the affiliate managers] knew that their affiliates were sending unlawful, unsolicited commercial advertisements and bulletins throughout the MySpace network."  Id., Ex. 3 at 8. With regard to a particularly large spam attack in August of 2006, the arbitrator declared that "[i]t is clear that Media Breakaway condoned, encouraged, knew about and benefitted from the unlawful spam attacks on Myspace in August 2006."  Id., Ex. 3 at 10.

Although Media Breakaway's affiliates were responsible for some of the illegal spamming, the arbitrator found that "where Media Breakaway benefitted from the wrongful activity, or chose to give second and third chances to an affiliate who still failed to comply, or directed rogue affiliates on how to evade detection – all of which Media Breakaway did after August 2006 – Media Breakaway should be responsible for

---

[1](...continued)
Anti-Spam statute, Cal. Bus. & Prof. Code § 17529; (5) breach of contract; (6) unfair competition; (7) trespass to chattels; and (8) conversion.

[2] Defendants argue that the information contained in GSUF ¶ 16 and subsequent paragraphs pertaining to the final arbitration award are not admissible.  Defendants' contentions are discussed infra in greater detail.

the consequences." Id.  The arbitrator further concluded that Richter's "penchant for bragging," particularly his "admission that he would be willing to pay one million in litigation to make eight million," informed the need for a substantial damage award in order to "prevent Media Breakaway from profiting for its wrongful and illegal past behavior." Id., Ex. 3 at 11.

On July 8, 2008, Judge King entered a stipulated judgment against defendants in accordance with the arbitrator's award, which awarded MySpace $6,079,751.04 in damages, attorneys fees and costs.  GSUF ¶ 42; DSGI ¶ 42.

**B.    Greenwich Insurance Policy**

Prior to the MySpace action, defendants submitted an application on September 29, 2006, for directors and liability insurance from Greenwich, policy No. ELU094382-06 (the "Greenwich Policy").  Compl. ¶ 11. The "General Questions" section of the application inquires of the applicant:

> [i]s the applicant aware of any facts, circumstances, or situations which exist at this time that might lead to a claim OR does the applicant have knowledge of incidents or potential claims for antitrust, copyright, patent infringement, representative actions, class actions, shareholder derivative actions or violations of federal or state securities or employment benefit law?

Id., Ex. A. Defendants' response to this question was "no," and Richter, in his capacity as Media Breakaway's CEO, signed the application.  Id.

Based on defendants' application, Greenwich issued the subject policy to defendants for the policy period October 1, 2006, to October 1, 2007.  Greenwich's Statement of Uncontroverted Facts ("GSUF") ¶ 1; Media Breakaway and Richter's Statement of Genuine Issue to Greenwich's MSJ ("DSGI") ¶ 1. The Greenwich Policy has a $1 million liability limit for all claims under the Management Liability and Company Reimbursement Coverage section.  GSUF ¶ 2; DSGI ¶ 2.  However, Section III(A) of the Policy's Management Liability and Company Reimbursement Coverage

part ("Exclusion III(A)") provides:

> The Insurer shall not be liable to make any payment for Loss, and shall have no duty to defend or pay Defense Expenses, in connection with any Claim made against an Insured:
>
> > (A) brought about or contributed to in fact by any:
> >
> > > (1) intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or
> > >
> > > (2) profit or remuneration gained by any Insured to which such   Insured is not legally entitled;
>
> as determined by a final adjudication in the underlying action or in a separate action or proceeding. Each Insured agrees that, if the Insurer has no liability to an Insured for Loss as a result of a Claim by reason of this EXCLUSION (A), such Insured will repay the Insurer upon demand all Defense Expenses paid on behalf of such Insured in connection with such Claim.

GSUF ¶ 4; DSGI-G ¶ 4; see also Compl., Ex. A.

Prior to the final Arbitration Award in the MySpace action, Greenwich agreed to provide defendants with a defense subject to a complete reservation of Greenwich's rights under the Greenwich Policy and applicable law.  GSUF ¶ 44, Ex. 7 ( July 25, 2007 letter from Greenwich's Counsel); DSGI ¶ 44.[3]  Pursuant to Cal. Civ. Code § 2860, defendants asserted the right to independent counsel and supplied Greenwich with defense counsels' invoices.  In response, Greenwich sent a check for $45,522.89 to Media Breakaway on December 21, 2007.  GSUF ¶¶ 45-57; DSGI ¶¶

---

[3] Defendants dispute the phrasing of this factual proposition, arguing that Greenwich only agreed to provide a *partial* defense to the MySpace action because Greenwich "unilaterally decided the rates charged by Media Breakaway's counsel were excessive, but never provided the rates of other defense counsel [in comparable actions]." DSGI ¶ 44.

1    45-47.  Defendants did not send any other invoices to Greenwich until after the

2    Arbitration Award.  GSUF ¶ 48; DSGI ¶ 48.

3        After receiving the Arbitration Award, Greenwich advised defendants on

4    August 8, 2008, that the Greenwich Policy did not provide coverage for the MySpace

5    action, and demanded that defendants reimburse Greenwich for the defense expenses

6    provided in December 2007.  GSUF ¶ 48; DSGI-G ¶ 48.  According to Greenwich,

7    the arbitrator's findings in the final Arbitration Award triggered Exclusion III(A), and

8    thus, on February 11, 2008, Greenwich initiated the instant civil action seeking

9    declaratory relief.  GSUF ¶ 44, Ex. 7.

10        **C.    Indian Harbor Insurance Policy**

11        Indian Harbor issued Media Breakaway an errors and omissions insurance

12   policy, no.  MPP0019202-01 (the "Indian Harbor Policy"), for the policy period

13   August 10, 2006 to August 10, 2007. SUF ¶ 7; DSGI ¶ 7.[4]  Subject to limitations, the

14   Indian Harbor Policy provides coverage for acts and omissions in the performance of

15   professional services by the Insured and those for whom the Insured is legally

16

17

-------------------

18       [4] With regard to the Indian Harbor Insurance policy attached as "Exhibit D" to

19   Indian Harbor's Statement of Uncontroverted Facts, defendants object to this material

20   because "this item was not properly authenticated as the declaration through which it was

     introduced was not signed under penalty of perjury." Defendants' Objections to Evidence

21   Filed in Support of Indian Harbor's MSJ at ¶ 4.  Because the policy is signed and dated

22   September 11, 2006, and appears on its face to be genuine, and because defendants have

     raised only a procedural objection to this document, the Court, in its discretion, concludes

23   that it satisfies the requirements of Fed. R. Evid. 901(a), which provides that authentication

24   of evidence is "satisfied by evidence sufficient to support a finding that the matter in

     question is what its proponent claims." Fed. R. Evid. 901(b)(4) (stating that documents

25   may be authenticated through "appearance, contents, substance, internal patterns, or other

     distinctive characteristics, taken in conjunction with circumstances."); see also Fenje v.

26   Feld, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003) ("Even if a party fails to authenticate a

27   document properly or to lay a proper foundation, the opposing party is not acting in good

     faith in raising such an objection if the party nevertheless knows that the document is

28   authentic.").

responsible.[5]  SUF ¶ 8; DSGI ¶ 8. However, section IV(A) of the Policy ("Exclusion IV(A)") states that "the Policy does not apply to any claim":

> Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by an Insured. The Company will provide the Insured with a defense of such claim and pay claim expenses for any such suit which is brought alleging such dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission as a single allegation in a multiple allegation suit, provided any one allegation is covered under this policy. Criminal proceedings are not covered under this policy regardless of the accusations made against the Insured.

SUF ¶ 9, Ex. D; DSGI ¶ 9.

Additionally, the Indian Harbor Policy contains another pertinent exclusion in section IV(I) ("Exclusion I"), stating that the Policy does not apply to any claim "[b]ased on or arising out of the gaining of any personal profit or advantage to which the Insured is not legally entitled."  SUF ¶ 10; DSGI ¶ 10.[6]

On March 27, 2007, Indian Harbor acknowledged defendants' tender of a defense in the MySpace action, and subject to reservation of its rights, commenced its investigation of MySpace's complaint. SUF ¶ 13; DSGI ¶ 3.  In early May 2007, Indian Harbor and defendants began negotiations regarding defendants' retention of

---

[5] Defendants object to the evidence presented in support of this factual proposition, but note that the fact is undisputed should the Court consider the Indian Harbor Policy.

[6] The page of the Indian Harbor Policy containing Exclusion I is missing from the copy of the policy included in Exhibit D of Indian Harbor's Statement of Uncontroverted Facts.  Defendants object the Indian Harbor Policy as evidence on the grounds that the copy of the Policy lacks foundation and is missing the relevant page for Exclusion I. DSGI ¶ 10; See also D. Obj. ¶ 4.  Nevertheless, the Court finds that the missing page is contained in the Declaration of Jeff Ward as Exhibit 3, and therefore the Court will consider the Indian Harbor Policy.

private counsel in the MySpace action and applicable rates for legal services.  SUF ¶ 14; DSGI ¶ 14.  On December 14, 2007, Indian Harbor paid $35,522.89 in connection with defendants' defense.[7]  SUF ¶ 23; DSGI ¶ 23.

After receiving the Arbitration Award, Indian Harbor determined that the arbitrator's findings triggered two exclusions in the Indian Harbor Policy and therefore denied defendants' request for indemnity coverage on July 23, 2008.  SUF ¶ 33; DSGI ¶ 33.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. American Pacific Corp., 114 F.3d 898, 902

_____

[7] Indian Harbor did not pay the balance of defendants' defense costs based on Exclusion IV(a) and Exclusion (I) of the policy in light of the arbitrator's findings.  DSUF ¶ 36.

1   (9th Cir. 1997).

2       In light of the facts presented by the nonmoving party, along with any

3   undisputed facts, the Court must decide whether the moving party is entitled to

4   judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors

5   Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for

6   summary judgment, "the inferences to be drawn from the underlying facts . . . must

7   be viewed in the light most favorable to the party opposing the motion." Matsushita

8   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted);

9   Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir.

10  1997).  Summary judgment for the moving party is proper when a rational trier of

11  fact would not be able to find for the nonmoving party on the claims at issue. See

12  Matsushita, 475 U.S. at 587.

13  **IV.    DISCUSSION**

14      **A.    Final Arbitration Award**

15      Defendants argue that the Court should not consider the final Arbitration

16  Award in the MySpace action as evidence because "a private arbitration award, even

17  if judicially confirmed, may not have non-mutual collateral estoppel effect."  Opp'n

18  at 6 (citing Vandenberg v. Superior Court, 21 Cal.4th 815, 825 (1999)).  Defendants

19  argue that there was no agreement between the parties to the arbitration that the

20  arbitration would have a non-mutual collateral estoppel effect in favor of third

21  parties.  Richter Decl. ¶ 2

22      Greenwich responds that Vandenberg does not apply because federal law, not

23  California law, is controlling with regard to issue preclusion in this case. Reply at 4-

24  5.  Greenwich contends that: (1) the MySpace action commenced in federal court; (2)

25  defendants, relying on the Federal Arbitration Act, moved in federal court to compel

26  arbitration; and (3) the federal district court entered a stipulated judgment based on

27  the Arbitration Award. Id.

28      In a diversity action, the court must apply the collateral estoppel rules of the

forum state.  <u>Bates v. Union Oil Co. of Cal.</u>, 944 F.2d 647, 648-49 (9th Cir. 1991).

Therefore, California law applies to the issue of collateral estoppel in this case.

Under California law, the preclusive effect of a prior federal court judgment is

resolved according to federal law.  <u>Younger v. Jensen</u>, 26 Cal. 3d 397, 411 (1980)

("A federal judgment has the same effect in the courts of this state as it would have in

a federal court."). Moreover, an arbitration award confirmed by a federal district

court qualifies as a federal judgment. <u>Harvey v. O'Quinn</u>, 57 Fed. Appx. 754, 754

(9th Cir. 2003) ("Under the Federal Arbitration Act, a judgment that results from

court confirmation of an arbitration award has 'the same force and effect' as any

other final judgment on the merits.").

    The doctrine of issue preclusion bars "'successive litigation of an issue of fact

or law actually litigated and resolved in a valid court determination essential to the

prior judgment,' even if the issue recurs in the context of a different claim." <u>Sturgell</u>,

128 S.Ct. at 2171.  For issue preclusion to apply, the relitigated issue must have been

"*actually* litigated and *necessarily* decided."  <u>Clements v. Airport Auth.</u>, 69 F.3d 321,

330 (9th Cir. 1995) (emphasis in original).  To foreclose litigation of an issue based

on issue preclusion

> (1) the issue at stake must be identical to the one alleged in the prior
> litigation; (2) the issue must have been actually litigated in the prior
> litigation; and (3) the determination of the issue in the prior litigation
> must have been a critical and necessary part of the judgment in the
> earlier action

<u>Clark v. Bear Stearns & Co.</u>, 966 F.2d 1318, 1320 (9th Cir. 1992).  The party

asserting issue preclusion bears the burden of showing that the standard is met. <u>Id.</u> at

1321.

    The Ninth Circuit has held that arbitration awards can have a collateral

estoppel effect on subsequent litigation.  <u>C.D. Anderson & Co, v. Lemos</u>, 832 F.2d

1097, 1100 (9th Cir. 1987) (holding that an arbitration award "can have res judicata

[claim preclusive] or collateral estoppel [issue preclusive] effect, even if the underlying claim involves the federal securities laws.").

The Court concludes that the arbitration award is admissible and has preclusive effect. Id.; Taines v. Bear, Stearns, & Co., Inc., 855 F.2d 862 (9th Cir. 1988) (finding that an arbitrator's decision had issue preclusive effect even when the arbitrator did not make findings of fact). The arbitrator found for MySpace on the ground that Media Breakaway "condoned, encouraged, knew about and benefitted from the unlawful spam attacks on MySpace in August 2006." Arbitrator's Award at 10. This same issue is at stake in this litigation, was actually litigated in the arbitration, and was a critical and necessary part of the arbitrator's conclusion. Therefore, defendants are precluded from arguing that they did not intentionally and illegally launch "spam attacks" against MySpace users.

**B.  Greenwich's Motion for Summary Judgment**

**1.  Exclusion III (A)(1)**

An insurance carrier is not required to defend actions not covered by an insurance policy. North Atlantic Cas. and Sur. Ins. Co. v. William D., 743 F. Supp. 1361, 1364 (N.D. Cal. 1990); Dyer v. Northbrook Property & Casualty Ins. Co., 210 Cal. App. 3d 1540, 1547 (1989) ("An insured is not covered for acts or omissions for which it is potentially liable if the underlying suit involves only acts the nature of which are clearly excluded from coverage."). The insurer has the burden to prove that an exclusion applies. Royal Globe Ins Co. v. Whitaker, 181 Cal. App. 3d 532, 537 (1986). An exclusionary clause in an insurance contract is construed strictly against the insurer and liberally in favor of the insured. Crane v. State Farm Inc. Co., 5 Cal.3d 112, 115-116 (1971). However, a court should give words their "plain and ordinary meaning" in construing the language of the contract. St. Paul Mercury Ins. Co. v. Medical Lab Network, 690 F. Supp. 901, 903 (C.D. Cal. 1988).

Greenwich argues that it is entitled to summary judgment because the subject policy does not provide coverage for the MySpace action. Greenwich contends that

Exclusion III(A) of the Greenwich Policy precludes coverage for the MySpace action because the Arbitration Award indicates that the claims in the MySpace action arose from intentionally dishonest or fraudulent acts by defendants.  Mot. at 11-13. Moreover, Greenwich argues that "[c]ourts routinely find exclusions such as [Exclusion III(A)] (which are sometimes called 'dishonesty exclusions' or 'personal profit exclusions') valid and enforceable."  Id. at 11 (citing TIG Speciality Ins. Co. V. PinkMonkey.com, Inc., 375 F.3d 365, 370-371 (5th Cir. 2004); North Atlantic Cas. Ins. and Sur. Ins. Co. V. William D., 743 F. Supp. 1361, 1365-1366 (N.D. Cal. 1990)).

Defendants respond that insurance policy exclusions are to be strictly construed against the insurer.  Opp'n at 9 (citing Producers Dairy Delivery v. Sentry Insurance Co., 41 Cal.3d 903, 912 (1986)).  Defendants argue that "the intentional act exclusion of the Greenwich policy is capable of multiple, reasonable interpretations" because the terms "intentional" and "willful" can be read as applying to all subsequent terms, and thus read as intending to apply only to intentional and willful conduct. Id.

Defendants further argue that insurance policy exclusions concerning intentional conduct have been strictly limited, and that most or all of the actual conduct in the MySpace action was that of independent contractors.  Id. at 10 (citing Arenson v. Nat'l Automobile and Cas. Ins. Co., 45 Cal.2d 81, 83-84 (1955)). Defendants contend that because the Exclusion III(A) does not contain a clear expression of an intent to exclude third parties for whom the insured is vicariously liable, Exclusion III(A) cannot be construed to negate coverage for such liability.  Id.

Finally, defendants argue that Greenwich cannot prove that Exclusion III(A) bars coverage because the Arbitration Award indicates that some of defendants' liability was caused not only by intentional and malicious conduct, but also by its errors in judgment and failure to train employees.  Id. at 13.  According to defendants, under the concurrent proximate cause doctrine, "where there are two or

more causes of damage, one of which is excluded, and one of which is covered, and either one of the causes could operate independently to cause damage, coverage is afforded to the insured." Id. at 12 (citing State Farm Fire & Casualty Co. v. Partridge, 10 Cal.3d 94 (1973); State of California v. Allstate Ins. Co., 45 Cal.4th 1008, 1030 (2009)). Defendants contend that because some of the damages in the final Arbitration Award are covered under the policy and cannot be separated from other damages, Exclusion III(A) does not apply. Id. at 15.

Exclusion III(A)(1) provides:

The Insurer shall not be liable to make any payment for Loss, and shall have no duty to defend or pay Defense Expenses, in connection with any Claim made against an Insured:

(A) brought about or contributed to in fact by any:

     (1) intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or

     . . .

as determined by a final adjudication in the underlying action or in a separate action or proceeding. Each Insured agrees that, if the Insurer has no liability to an Insured for Loss as a result of a Claim by reason of this EXCLUSION (A), such Insured will repay the Insurer upon demand all Defense Expenses paid on behalf of such Insured in connection with such Claim.

GSUF ¶ 4; DSGI-G ¶ 4; see also Compl., Ex. A.

The Court concludes that Exclusion III(A) applies to the claims made against defendants in the MySpace suit. The arbitrator clearly found that defendants engaged in intentionally dishonest and illegal activity in connection with the MySpace suit. Arbitrator's Award at 10. Therefore, the claims in the MySpace suit clearly constitute claims "brought about or contributed in fact by any . . . intentionally

dishonest, fraudulent or criminal act."[8] <u>See</u> <u>Acceptance Ins. Co. v. Syufy Enterprises</u>, 69 Cal. App. 4th 321, 328 (1999) ("California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions.").   Furthermore, the Greenwich Policy specifically provides that "[e]ach Insured agrees that, if the Insurer has no liability to an Insured for Loss as a result of a Claim by reason of this EXCLUSION (A), such Insured will repay the Insurer upon demand all Defense Expenses paid on behalf of such Insured in connection with such Claim."

> ## 2.    Exclusion III(A)(2)

Alternatively, the Court concludes that Exclusion III(A)(2) applies to exclude coverage.  Exclusion III(A)(2) provides

> The Insurer shall not be liable to make any payment for Loss, and shall
>
> have no duty to defend or pay Defense Expenses, in connection with any
>
> Claim made against an Insured:
>
> (A) brought about or contributed to in fact by any:
>
> . . .
>
> > (2) profit or remuneration gained by any Insured to which such
> >
> > Insured is not legally entitled;
>
> as determined by a final adjudication in the underlying action or in a

---

[8] At oral argument defense counsel argued that Exclusion III(A)(1) does not apply to the MySpace suit because (1) the arbitrator's award addressed both intentional and negligent conduct and (2) the MySpace suit contained claims that had nothing to do with intentional misconduct, such as breach of contract.  While the arbitrator's award does make passing reference to some conduct that could be considered negligent, the thrust of the arbitrator's award is defendants' intentional, illegal scheme to spam and "phish" MySpace users.  Similarly, all of the claims in the MySpace action, including breach of contract, stemmed from defendants' intentional wrongful conduct.  Plaintiffs in the MySpace action alleged that defendants' breached the terms of use by "submitting content through MySpace that promotes information that is known to be false or misleading for commercial or unlawful purposes, engaging in criminal or tortious activity, attempting to impersonate another member or person."  Greenwich Compl., Ex. D. ¶ 44.

separate action or proceeding. Each Insured agrees that, if the Insurer has no liability to an Insured for Loss as a result of a Claim by reason of this EXCLUSION (A), such Insured will repay the Insurer upon demand all Defense Expenses paid on behalf of such Insured in connection with such Claim.

GSUF ¶ 4; DSGI-G ¶ 4; see also Compl., Ex. A.

The arbitrator clearly found that defendants obtained profits from their phishing scheme to which they were not legally entitled. Arbitration Award at 11 (finding that a substantial damage award was necessary to "prevent Media Breakaway from profiting for its wrongful and illegal past behavior."). Because any arguably negligent conduct resulted in profit to defendants to which they were not legally entitled, Exclusion III(A)(2) would in any even independently bar coverage. Therefore, Greenwich is entitled to summary judgment on its declaratory relief claim.

### 3. Applicability of California Insurance Code § 533 to the Greenwich Policy

Additionally, Greenwich argues that Cal. Ins. Code § 533 prohibits coverage in the MySpace action. Mot. at 16. Section 533 provides that "[a]n insurer is not liable for a loss caused by the willful act of the insured." Cal. Ins. Code § 533. Greenwich contends that the arbitrator found that (1) Media Breakaway and Richter engaged in spamming and phishing, which involve deceit and violate numerous statutes; and (2) Media Breakaway and Richter benefitted from the wrongful activity and directed rogue affiliates on how to evade detection. Mot. at 16-17.

Defendants respond that Section 533 does not apply absent a "subjective intent to injure." Opp'n at 9 (citing J.C. Penney Cas. Co. v. M.J., 52 Cal. 3d 1009, 1021-25 (1991)). Defendants further argue that their liability does not arise exclusively from its own conduct, but rather from the conduct of independent contractors. Id. at 12.

Under California law, if the insured party seeks coverage for an intentional,

wrongful act that is inherently and necessarily harmful, section 533 of the California Insurance Code precludes indemnification, whether or not the insured subjectively intended harm. Mez Industries, Inc. v. Pacific Nat. Ins. Co., 76 Cal. App. 4th 856, 876 (1999); Shell Oil Co. v. Winterthur Swiss Ins. Co. 12 Cal. App. 4th 715, 740-741 (1993). A "wilful act" under section 533 will include either "an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result." Shell Oil Co. v. Winterthur Swiss Ins. Co., 12 Cal. App. 4th at 742. "It also appears that a wilful act includes an intentional and wrongful act in which the harm is inherent in the act itself." J. C. Penney Casualty Ins. Co. v. M. K. 52 Cal.3d 1009, 1025 (1991).

The Court concludes that Cal. Ins. Code § 533 bars coverage for the MySpace action. The arbitrator found that defendants intentionally engaged in illegal and wrongful phishing and spamming. Phishing, an illegal activity, clearly involves harm that is "inherent in the act itself." J.C. Penney, 52 Cal.3d at 1025.

### 4.    Right to Reimbursement and Defendants' Counterclaims

Greenwich argues that because Exclusion III and Cal. Ins. Code § 533 preclude coverage for the MySpace action, Greenwich has no duty to defend or to indemnify defendants, and could not have breached an implied covenant of good faith and fair dealing. Id. at 18. Therefore, Greenwich contends that it is entitled to summary judgment (1) on its claims for declaratory relief and reimbursement; and (2) on all of defendants' counterclaims. Id. at 11-18.

Defendants respond that Greenwich is not entitled to reimbursement because the doctrine of concurrent proximate causation requires that an insurer prove by preponderance of the evidence that specific defense expenses were spent exclusively for the defense of non-covered claims. Opp'n at 19. Defendants further respond that Greenwich breached the terms of the policy in bad faith when it refused to indemnify defendants. Id. at 20. Furthermore, defendants contend that prior to the Arbitration Award, at a time when "Greenwich undeniably had a duty to defend," Greenwich

16

breached the implied covenant of good faith and fair dealing when it unilaterally imposed unreasonably low rates for defendants' defense in the MySpace action.  Id.

With regard to reimbursement, under California law, an insurance carrier's right to reimbursement for costs incurred in providing a defense does not depend entirely on whether a duty to defend exists under the policy.  St. Paul Mercury Ins. Co. v. Ralee Eng'g Co., 804 F.2d 520, 522 (9th Cir. 1986).  Rather, only if there was an "agreement or understanding" between the insured and insurer that there was a right to reimbursement can a court order the insured to reimburse the insurer.  Id. at 522 (affirming the district court's denial of plaintiff-insurer's summary judgment because it was not clear that there was such an understanding that the insurer could seek reimbursement).

The Court concludes that Greenwich is entitled to reimbursement in the amount of $45,522.89, because the parties agreed to a right to reimbursement.  St. Paul, 804 F.2d at 522.  The policy specifically provides that Greenwich "shall have no duty to defend or pay Defense Expenses," and that Media Breakaway shall repay "all Defense Expenses."  Greenwich Policy Section III (A) at 63.  Furthermore,  "a letter reserving the right to reimbursement sent to the insured and the insured's acceptance of representation without comment equals such an agreement or understanding, justifying the reimbursement to the insurer."  William D. 743 F. Supp at 1366-1367; Walbrook Insurance Co. v. Goshgarian & Goshgarian, 726 F. Supp. 777, 782-83 (C.D. Cal. 1989).  Greenwich expressly reserved its right to reimbursement and defendants did not object.[9]

---

[9] Furthermore, defendants' arguments concerning the doctrine of concurrent proximate causation are not persuasive because the arbitrator specifically found liability only for defendants' knowing and intentional acts.  Arbitration Award at 11 ("When affiliates illegally spammed MySpace without the knowledge of Media Breakaway, and in some instances these affiliates were actually affiliates of other affiliate networks and multiple steps removed from discipline and control, it is not just and equitable to lay
(continued...)

The Court further concludes that Greenwich is entitled to summary judgment on defendants' counterclaims.  Greenwich is not liable for breach of the duty to defend or indemnify because the Court has concluded as a matter of law that the MySpace action was not covered under the subject policy.  Furthermore, Greenwich cannot be liable for breach of the covenant of good faith and fair dealing absent a breach of contract.  Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 36 (1995) ("It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer.").

**C.    Indian Harbor Motion for Summary Judgment**

**1.    Exclusion IV(A) in the Indian Harbor Policy**

Indian Harbor argues that it is entitled to summary judgment because the Arbitration Award contains findings that preclude coverage under the policy that Indian Harbor issued to defendants.  Mot. at 5-8. Indian Harbor argues that the Arbitration Award constitutes a finding of intentional and malicious conduct that bars coverage under Exclusion IV(A) of the Policy.  Id. at 5. Exclusion IV(A) of the Indian Harbor provides that

the Policy does not apply to any claim:

Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by an Insured. The Company will provide the Insured with a defense of such claim and pay claim expenses for any such suit which is brought alleging such dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission as a single allegation in a multiple allegation suit, provided

---

[9](...continued)
responsibility for that behavior at the feet of Media Breakaway.").

any one allegation is covered under this policy. Criminal proceedings are not covered under this policy regardless of the accusations made against the Insured.

The Court concludes that Exclusion IV(A) applies to the MySpace suit.  As discussed supra, the arbitrator clearly found that defendants engaged in intentional misconduct and illegal activity in connection with the MySpace suit.  Therefore, the MySpace suit constitutes "a claim based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious  act" and is not covered under the Indian Harbor policy.  St. Paul Mercury Ins. Co. v. Medical Lab Network, 690 F. Supp. 901, 903 (C.D. Cal. 1988) (holding that a court should give words their "plain and ordinary meaning" in construing the language of the contract.").

### 2. Exclusion I of the Indian Harbor Policy

The Court concludes that Exclusion I, which provides that the Policy does not apply to any claim "[b]ased on or arising out of the gaining of any personal profit or advantage to which the Insured is not legally entitled," also excludes coverage.  As discussed supra,  the arbitrator unambiguously found that defendants obtained from their phishing scheme profits to which they were not legally entitled.  Therefore, coverage for the MySpace action was clearly barred by Exclusion I.

### 3. Applicability of § 533 to the Indian Harbor Policy

As the Court concluded supra, Cal. Ins. Code § 533 bars coverage for the MySpace action. The arbitrator found that defendants intentionally engaged in illegal and wrongful phishing and spamming.  Phishing, an illegal activity, clearly involves harm that is "inherent in the act itself."  J.C. Penney, 52 Cal.3d at 1025.

### 4. Right to Reimbursement and Defendants' Counterclaims

The Court concludes that Indian Harbor is entitled to summary judgment on its reimbursement claim, in the amount of $35,522.89, and defendants' counterclaims. Indian Harbor tendered its defense of defendants with an express reservation of rights, to which defendants did not object.  As discussed supra, "a letter reserving the

right to reimbursement sent to the insured and the insured's acceptance of representation without comment equals such an agreement or understanding, justifying the reimbursement to the insurer." <u>William D.</u> 743 F. Supp at 1366-1367; <u>Walbrook Insurance</u>, 726 F. Supp. at 782-83.

Furthermore, as discussed supra, because the Court finds that the MySpace action was not covered under the Indian Harbor policy, Indian Harbor is entitled to summary judgment on defendants' counterclaims for breach of the duty to indemnify, breach of the duty to defend, and breach of the implied covenant of good faith and fair dealing.

## V.   CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS Greenwich Insurance's motion for summary judgment on its declaratory relief claim and defendants' counterclaims.  The Court further GRANTS Indian Harbor's motion for summary judgment on its declaratory relief claim and defendants' counterclaims.

IT IS SO ORDERED

Dated: July 22, 2009

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE